FILED
2020 Apr-09 AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBIN R. RODABAUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:18-CV-216-CLM |
| | ) |
| REGIONS BANK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Defendant Regions Bank fired Plaintiff Robin Rodabaugh. The parties dispute why. Rodabaugh alleges that the bank fired him because of his age (67) and because Rodabaugh filed an internal complaint and an EEOC charge that stemmed, in part, from the exposure of a female co-worker's breast during an argument. Regions claims that it fired Rodabaugh because he was insubordinate; he stalked and threatened multiple co-workers; and he had the ability to bring down the bank.

Rodabaugh doesn't dispute that the bank fired him for these reasons, nor does he dispute nearly all the facts that support the bank's reasons. Doc. 37, 2-3. Because Rodabaugh fails to tackle the bank's reasons head-on, he cannot establish that his age or retaliation for filing complaints is the "but-for" reason that he was fired. The bank is thus entitled to summary judgment.

1

# FACTUAL BACKGROUND

Regions Bank hired Rodabaugh as a Mainframe Systems Engineer when he was 62 years old and promoted him to Mainframe Systems Engineer Manager the next year. This case revolves around a series of incidents that occurred thereafter.

1. <u>Complaints after the "Wardrobe Malfunction"</u>: Rodabaugh often disagreed with female coworker Brigitte Wilson regarding work-related issues. In 2013, Rodabaugh complained to Regions' human resources department ("HR") that Wilson's breast became exposed during one such work-related argument, an act that Rodabaugh described as a "wardrobe malfunction." Regions investigated the incident and determined that, if Ms. Wilson's breast had been exposed, it was not an intentional act of harassment or discrimination.

Rodabaugh continued to make internal complaints about Wilson through 2016. For example, Rodabaugh complained that Wilson sent him an email that asked him not to remove phones or computers from her workspace. HR investigated the complaint and determined that either Rodabaugh or someone acting under his direction had removed such equipment from Wilson's space without authorization. Later, Rodabaugh complained that Wilson directed her team not to work with Rodabaugh or sit with him at lunch. HR investigated this complaint and determined that Wilson had given these instructions because she felt Rodabaugh was targeting her and might get her in trouble.

In May 2016, HR met with Rodabaugh to discuss his repeated complaints against Wilson and told Rodabaugh that the complaints had to stop. Rodabaugh promptly filed an EEOC complaint that alleged the bank did nothing to resolve his complaints about Wilson, who Rodabaugh believed was retaliating against him for filing the 2013 HR complaint about the wardrobe malfunction. Doc. 31-2, 61-62. Wilson resigned later that month.

2. <u>The Treatment of Lenora Cicero</u>: While Rodabaugh was filing complaints against Wilson, other employees were filing HR complaints against Rodabaugh. For example, Lenora Cicero, who reported directly to Rodabaugh, submitted a list of 42 examples of how she believed Rodabaugh was harassing her—a list that included staring at her, stalking her, calling her after hours on non-work-related matters, accusing her of drug use, and telling others that she used drugs.

In August 2016, the bank assigned Cicero to another supervisor and moved her desk. Members of the bank's HR team instructed Rodabaugh to stay away from Cicero. Rodabaugh, however, hovered over Cicero in her new work area, leading to continued HR complaints by Cicero. Based on the continued complaints, the HR team requested that corporate security monitor Rodabaugh. Security cameras showed Rodabaugh continuing to walk through Cicero's hallway and stand in her doorway.

Without authorization, Rodabaugh also revoked Cicero's access to an essential computer system, preventing Cicero from doing her job. Rodabaugh told members of his group that Cicero was only temporary and would be leaving the group soon, despite having no information to support these claims.

3. <u>The LPAR Implementation</u>: The bank used a "z/OS" operating system. For the better part of a year, Rodabaugh requested that he be allowed to implement a new environment called "LPAR" onto the mainframe during the monthly Initial Program Load ("IPL"). Every month, Rodabaugh was told "no." Doc. 32, 23-24.

In September 2016, Lance Pine again told Rodabaugh "no." While Pine was out of the office for a family emergency he learned that Rodabaugh had nevertheless included LPAR implementation on that month's IPL calendar and that an order to change software had been submitted to carry out the implementation. Upon returning to the office, Pine told Rodabaugh that the answer was still "no." Yet the night before the monthly IPL was scheduled to run, Pine discovered that the LPAR implementation had not been removed. Pine again confronted Rodabaugh, who claimed that the failure to remove it was a mistake and then argued again that Pine should implement the LPAR the next day.[1] Doc. 32, 24-27.

---

[1] Contrary to what he told Pine at the time, Rodabaugh testified during discovery that the LPAR implementation was "not [left there] by accident." Doc. 31-1, 59, Tr. P. 223.

4. <u>Rodabaugh's Termination and Lawsuit</u>: Pine fired Rodabaugh on November 7, 2016. Pine stated that he decided to fire Rodabaugh because "in light of Mr. Rodabaugh's repeated insubordination, continued defiance to [*sic*] following orders, and his repeated threats to myself and Dana Allison,[2] combined with his high level of access to Regions' operating and computing systems, [Pine] was concerned that Mr. Rodabaugh posed a danger to Regions' business and to its employees…." Doc. 31-6, 5.

Rodabaugh filed his second EEOC charge two weeks later (November 22, 2016). In it, Rodabaugh alleged that he was discriminated against because of his age and terminated in retaliation for filing his previous charge. Doc. 31-2, Ex. 12.

After the EEOC granted him a right-to-sue letter, Rodabaugh filed a two-count complaint with this Court. Count I alleges that Regions retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Count II that Rodabaugh was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). Doc. 1. Regions has moved for summary judgment on all claims. Doc. 30.

---

[2] Rodabaugh made several statements to Dana Allison and Lance Pine that implied Rodabaugh was untouchable because Rodabaugh had filed the 2016 EEOC charge.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000).

## DISCUSSION

Rodabaugh has two claims: (1) a retaliation claim under Title VII and (2) an age-discrimination claim under the ADEA. Both of these claims require strict "but-for" causation. *See Univ. of Texas Sw. Medical Center v. Nassar*, 570 U.S. 338 (2013) (holding that Title VII's private-sector retaliation provision requires but-for causation); *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167 (2009) (holding that ADEA age-discrimination claims require but-for causation). In other words, it is not enough for Rodabaugh to prove that his age or his EEOC/HR complaints were a

factor in his termination; he must prove that he would not have been fired "but for" his age or his complaints.

That means the Court must review both of Rodabaugh's claims under the three-part *McDonell Douglas* test:

- Step 1: The plaintiff must establish a prima facie case of discrimination or retaliation. If he does, then,

- Step 2: The Defendant employer must articulate some legitimate, nondiscriminatory/non-retaliatory reason for the employee's termination. If it does, then,

- Step 3: The Plaintiff must show that the employer's stated reason(s) is merely pretext, and that the termination was motivated by the discriminatory or retaliatory purpose established in Step 1.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To successfully rebut the employer's stated reason(s) at Step Three, the plaintiff must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). The Court now applies this test to both of Rodabaugh's claims.

## I. Rodabaugh's Title VII Retaliation Claim

In Count 1, Rodabaugh alleges that Regions retaliated against him "because of EEOC charge [*sic*] and/or his prior internal complaint and opposition to sex discrimination in violation of 42 U.S.C.A. § 2000e-3(a)…." Doc. 1, 5-6. Rodabaugh

7

also alleges that "but for making his protesting the treatment [*sic*]," Rodabaugh would not have been terminated…." Doc. 1, 6.

In other words, Rodabaugh alleges that Regions fired him in November 2017 because Rodabaugh complained about the Wilson "wardrobe malfunction" incident to HR in 2013 and then complained to the EEOC in 2016 when, in Rodabaugh's view, Regions was not taking sufficient action against Wilson for Wilson's repeated (non-sexual) harassment of Rodabaugh.

### A. Rodabaugh presents a prima facie case of retaliation under the participation clause.

The Court finds that Rodabaugh has presented evidence that would allow a reasonable juror to find that Rodabaugh's participation in a protected activity was a factor in his termination.

The law: Title VII provides that "[i]t shall be an unlawful employment practice…to discriminate against any individual…because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This provision protects two types of activity. The "opposition clause" prohibits retaliation against an employee for opposing unlawful employment practices. The "participation clause" prohibits retaliation against an employee for participating in "proceedings and activities which occur in conjunction with or after the filing of a

formal charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

"To make out a prima facie case of retaliation, a plaintiff must show: (1) that [he] engaged in an activity protected under Title VII; (2) [he] suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). The Court applies this three-part test to Rodabaugh's retaliation claim as it relates to both the opposition clause and the participation clause.

<u>Opposition Clause</u>: First, the Court must determine whether Rodabaugh engaged in activity protected under the opposition clause. Under Eleventh Circuit law, "a plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (citation omitted). This standard includes both a subjective and an objective component. "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Id.* The objective reasonableness of a plaintiff's belief "must be measured against existing substantive law." *Clover v. Total Sys. Services, Inc.*, 176 F.3d 1346, 1351 (11th Cir.

9

1999). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).

The Court need not address whether Rodabaugh had a subjective good-faith belief that Regions was engaging in employment practices prohibited by Title VII because, even if he did, Rodabaugh's belief that he was being unlawfully harassed based on sex would have been objectively unreasonable given then-existing law.

The "wardrobe malfunction" incident that prompted Rodabaugh's first internal complaint—*i.e.*, the 2013 HR complaint—was not actionable sexual harassment. Title VII prohibits sexual harassment when it is "sufficiently severe or pervasive to [*sic*] alter the terms and conditions of work." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1300 (11th Cir. 2007). The wardrobe malfunction incident does not meet that standard. It was a one-time incident during a work-related argument. Rodabaugh testified that he did not believe that Ms. Wilson intended to indicate any desire to have sexual relations with him when her breast became exposed (doc. 31-1, 31, Tr. p. 112), and Wilson never directed any other action of a sexual nature toward Rodabaugh. The Court therefore finds that

Rodabaugh's 2013 HR complaint cannot reasonably be described as involving sexual harassment.

Rodabaugh's remaining complaints, including his first EEOC charge in 2016, do not reference any sexual or sex-discriminatory conduct or practice—a fact that Rodabaugh acknowledges in his brief: "Rodabaugh did not file an EEOC charge based on sexual harassment. No claim of sexual harassment is brought against Regions. Rodabaugh's first EEOC charge in May 2016 was restricted to his contention that Wilson was retaliating against him for his prior internal HR complaint about sexual harassment." Doc. 37 at 9.

In short, the Court cannot discern any practice that Rodabaugh opposed that Title VII might prohibit. The Court thus concludes that Rodabaugh did not engage in activity protected under the opposition clause.

Participation Clause: The Court reaches the opposite conclusion on the participation clause. Filing a formal charge with the EEOC and participating in related proceedings or investigations are forms of activity protected under Title VII. Title VII protection also extends to the filing of internal complaints and even informal processes and practices of complaining. *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[W]e recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like Rollins, who informally voice

complaints to their superiors or who use their employers' internal grievance procedures.") (citations omitted).

Eleventh Circuit law is unclear on whether the requirements of objective reasonableness and good faith that apply to claims brought under the opposition clause also apply to claims brought under the participation clause. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998) ("[W]e need not decide whether protection from retaliation under the participation clause is conditioned by a good faith, reasonable basis requirement."). Different circuits have reached different conclusions on this question. *Compare Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004) (holding that an employee who, in bad faith, filed an unreasonable and meritless complaint with the EEOC was not entitled to protection from retaliation) *with Johnson v. University of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) ("Protection is not lost if the employee is wrong on the merits of the charge, nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong. Thus, once activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation.") (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (citations omitted)).

Rodabaugh appears to agree that a requirement of objective reasonableness is appropriate. Doc. 37, 13. And if the Court were writing on a blank slate, it would

12

require objective reasonableness. But the Court will not apply the objective reasonableness requirement to Rodabaugh's participation clause argument because the Court believes that is most consistent with *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969), which is binding on this court.[3]

The Court thus finds that Rodabaugh engaged in activity protected under Title VII's participation clause—*i.e.*, filing internal complaints and EEOC charges—and has thus established the first element of a prima facie case of retaliation.

As for the second element of a prima facie case, the Court finds that Rodabaugh suffered a materially adverse action when he was terminated. *See Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004).

As for the final element (*i.e.*, causal connection), the Court cannot conclude that Rodabaugh's complaints caused his termination, but, viewing the evidence in the light most favorable to Rodabaugh, a reasonable juror could find that Rodabaugh's termination was linked to his participation in the bank's internal complaint process or the EEOC charge process. The Court therefore finds that Rodabaugh has established a prima facie case of retaliation.

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit handed down before the close of business on September 30, 1981, are binding authority in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

## B. Regions proffers legitimate, non-retaliatory reasons for terminating Rodabaugh.

At the second step of *McDonnell Douglas*, the burden shifts to the defendant to "proffer a legitimate, non-discriminatory reason for the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citation omitted).

Lance Pine, who decided to fire Rodabaugh, stated that he did so "in light of Mr. Rodabaugh's repeated insubordination, continued defiance to [*sic*] following orders, and his repeated threats to myself and Dana Allison, combined with his high level of access to Regions' operating and computing systems…." Doc. 31-6, 5. Regions proffers the same reasons in their brief supporting summary judgment. Doc. 32, 43-44.

Pine stated that he "was concerned that Mr. Rodabaugh posed a danger to Regions' business and to its employees…." Doc. 31-6, 5. Dana Allison similarly testified that "Rodabaugh had the capacity to bring down the bank if he wanted. He was behaving so erratically that we could not know what he may [*sic*] do next." Doc. 31-7, 6.

The Court finds these to be legitimate, non-retaliatory reasons and finds that, by offering them, Regions has satisfied its burden at Step Two. *Holified v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (citation omitted) (stating that the step-two burden is "exceedingly light").

**C. Rodabaugh fails to prove pretext because he fails to tackle Regions' non-retaliatory reasons head-on.**

At the final step of *McDonnell Douglas*, the plaintiff must "demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford*, 529 F.3d at 976. A plaintiff must "meet [the employer's proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Rodabaugh fails to meet this burden.

Again, Regions terminated Rodabaugh "in light of Mr. Rodabaugh's repeated insubordination, continued defiance to [*sic*] following orders, and his repeated threats to [Lance Pine] and Dana Allison, combined with his high level of access to Regions' operating and computing systems…." Doc. 31-6, 5. Specifically, Rodabaugh disputes none of the following:

1. Rodabaugh was warned to stop stalking/hovering over Lenora Cicero, yet he continued to do so after her cubicle was moved. The hovering became so persistent that bank security began monitoring Rodabaugh with video surveillance.

2. Rodabaugh revoked, without authorization, Cicero's access to a "master catalog" that she need to perform her job.

3. Rodabaugh made vague threats to Dana Allison and Lance Pine that Rodabaugh was untouchable once he filed the 2016 EEOC charge.

4. Rodabaugh tried to include implementation of the LPAR environment on the bank's mainframe after being repeatedly told "no" because the bank was concerned that the effects of the change had yet to be sufficiently studied.

15

In fact, Rodabaugh disputes only four of the 101 facts offered by Regions, nearly all of which focus on the reasons Rodabaugh was fired. Doc. 37, 2-3.

To establish pretext regarding his treatment of Cicero, Rodabaugh states that Cicero complained about "each of her supervisors" (*i.e.,* Rodabaugh, Wilson, and Kevin Lazenby) but only Rodabaugh was fired. Doc. 37, 15. Assuming that Cicero did complain about all three persons, her complaints are not similar enough to establish pretext. Cicero allegedly complained about Wilson because Wilson "wanted to fire her" and about Lazenby because Lazenby "refused to speak to her." *Id.* at 16. Neither supervisor was alleged to have stalked Cicero to the point that she had to be moved and bank security needed to undertake video surveillance. Nor was either supervisor alleged to have removed Cicero's access to a computer system necessary for her to do her job. Thus, the Court finds that, even in the light most favorable to Rodabaugh, neither Wilson nor Lazenby was similarly situated to Rodabaugh. So Rodabaugh cannot establish pretext by pointing to the fact that Regions did not fire them.

To establish pretext on the LPAR implementation, Rodabaugh claims that he "followed the verbal instructions he was given to start the IPL and never the less was informed that he was insubordinate for doing so." *Id.* at 16-17. But Regions does not argue that starting the IPL was the problem; Regions argues that scheduling the LPAR mainframe implementation as part of the IPL was the problem because

Rodabaugh had been repeatedly and explicitly told not to include the LPAR. In other words, Rodabaugh fails to tackle the bank's actual argument head-on.

Nor does Rodabaugh tackle head-on his threats to Pine and Allison that neither person should act against Rodabaugh because he was untouchable thanks to the filing of his first EEOC charge. Rodabaugh fails to discuss this reason at all, so Rodabaugh fails to show that similarly situated persons were not fired for acting as Rodabaugh had.

In short, Rodabaugh fails to address Regions' non-retaliatory reasons head on; he simply insists that he was fired for retaliatory reasons. That is not enough. Even if a reasonable juror could find that retaliation was a factor in the bank's decision to fire him, no reasonable juror could find that retaliation was the "but for" cause. Regions undisputedly had several legitimate reasons to terminate Rodabaugh's employment. Rodabaugh presents no argument that these reasons were merely pretextual. And thus Rodabaugh cannot establish a Title VII claim for retaliation.

## II. Rodabaugh's ADEA Claim

Rodabaugh's age discrimination claim under the ADEA is subject to the same "but for" causation requirement, and is thus reviewed by applying the same three-part *McDonell Douglas* test as his Title VII retaliation claim.

### A. Rodabaugh establishes a prima facie case.

To establish his prima facie case of age discrimination, Rodabaugh must show that he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024 (citation omitted).

Rodabaugh meets the first three elements. Rodabaugh was 67 years old when Regions terminated him and was thus a member of the class protected by ADEA. *See* 29 U.S.C. § 631(a) (prohibiting employers from discriminating against persons age 40 or older on the basis of age). Rodabaugh faced an adverse employment action—*i.e.,* termination. And Regions hired Rodabaugh when he was 62 years old and does not dispute that he was competent and qualified, so the Court presumes that he was qualified to do the job.

The only controversial element is the last one—*i.e.,* whether Rodabaugh was replaced by a younger individual. Regions claims that it did not replace Rodabaugh. Doc. 32, 46 (citing doc. 31-6, 6, ¶ 22) ("Following Mr. Rodabaugh's termination, Regions did not hire a replacement for the position."). Rodabaugh argues that there is a genuine issue of material fact as to whether he was effectively replaced by 55-year-old Phillip Propst. Doc. 37, 21. The Court agrees with Rodabaugh that, when the evidence is viewed in the light most favorable to him, a reasonable juror could

find that Regions replaced him with Mr. Propst. Rodabaugh has thus made out a prima facie case of discrimination under ADEA.

### B. Regions proffers legitimate, non-discriminatory reasons for terminating Rodabaugh.

At the second step of *McDonnell Douglas*, the burden shifts to the defendant to "proffer a legitimate, non-discriminatory reason for the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citation omitted). As stated in Part I, Regions fired Rodabaugh "in light of Mr. Rodabaugh's repeated insubordination, continued defiance to [*sic*] following orders, and his repeated threats to myself and Dana Allison, combined with his high level of access to Regions' operating and computing systems…." Doc. 31-6, 5. For the reasons outlined in Part I, the Court finds these to be legitimate, non-discriminatory reasons and thus the burden shifts back to Rodabaugh at Step Three.

### C. Rodabaugh fails to prove pretext because he fails to tackle Regions' non-discriminatory reasons head-on.

At Step Three, Rodabaugh must show that Regions' proffered reasons are merely pretextual, and that Regions fired Rodabaugh (67) so that it could replace with him with a younger man, Phillip Probst (55). Put another way, Rodabaugh must provide sufficient evidence that the 12-year age gap between Rodabaugh and Probst was the "but for" reason for Regions' decision.

But Rodabaugh offers no argument or evidence of pretext in his brief, much less evidence that Probst also hovered over female co-workers, gave veiled threats to HR supervisors, and ignored repeated instructions against implementing new software. Doc. 37, 17-22. The Court thus finds that (a) Rodabaugh abandoned a claim of pretext, and, even if pretext was not abandoned, (b) Rodabaugh has failed to offer sufficient evidence that would allow a reasonable juror to find that age was the but-for cause of Regions' decision to fire Rodabaugh.

## CONCLUSION

Rodabaugh fails to tackle head-on Regions' non-discriminatory reasons for firing him. Thus, he fails to offer sufficient evidence that his age or his participation in protected activities (*i.e.*, internal complaints and EEOC charges) were the but-for cause of his termination. Regions' motion for summary judgment is thus due to be granted. The Court will enter a separate order carrying out this opinion.

**DONE** this 9th day of April, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE